FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SIMON R., | No. 1:18-CV-03200-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 13, 14. Attorney D. James Tree represents Simon R. (Plaintiff); Special Assistant United States Attorney Erin Highland represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **DENIES,** Plaintiff's Motion for Summary

---

[1]Andrew M. Saul is now the Commissioner of the Social Security Administration. Accordingly, the Court substitutes Andrew M. Saul as the Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P. 25(d).

ORDER GRANTING DEFENDANT'S MOTION - 1

Judgment and **GRANTS** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 12, 2011, Tr. 263, alleging disability since July 1, 2008, Tr. 217, 224, due to bilateral knee pain, knee injury, arthritis, bursitis in the right elbow, bleeding ulcers, and gastroesophageal reflux disease (GERD), Tr. 267. The applications were denied initially and upon reconsideration. Tr. 126-134, 137-150. Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on August 14, 2013, at which Plaintiff, represented by counsel, and vocational expert Trevor Duncan testified. Tr. 42-71. The ALJ issued an unfavorable decision on September 13, 2013. Tr. 23-36. The Appeals Council denied review on January 2, 2015. Tr. 1-7. Plaintiff then requested judicial review of the claim before this Court on February 27, 2015. Tr. 714-16.

This Court remanded the case to the Commissioner for additional proceedings on March 1, 2016. Tr. 721-41. On April 29, 2016, the Appeals Council remanded the case back to the ALJ for additional proceedings with instructions to consolidate Plaintiff's subsequent applications for benefits with the current claim. Tr. 749. Another hearing was held on August 23, 2017, and the ALJ heard testimony from medical expert Ronald Kendrick, M.D., psychological expert Stephen Rubin, Ph.D., and vocational expert Becky Hill. Tr. 628-80. On August 8, 2018, the ALJ issued an unfavorable decision. Tr. 582-601. The Appeals Council did not assume jurisdiction over the case within the period prescribed by 20 C.F.R. § 404.984(a). Therefore, the ALJ's August 8, 2018 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on October 12, 2018. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the

ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 43 years old at the alleged date of onset. Tr. 217. Plaintiff completed his GED in 1986. Tr. 268. Plaintiff had past work as a cook, material handler, salesperson, and fast food manager. Tr. 66, 283-293. Plaintiff reported that he stopped working on July 1, 2008 because of his condition. Tr. 267.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process

for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),
416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  In steps one
through four, the burden of proof rests upon the claimant to establish a prima facie
case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-99.  This
burden is met once the claimant establishes that physical or mental impairments
prevent him from engaging in his previous occupations.  20 C.F.R. §§ 404.1520(a),
416.920(a)(4).  If the claimant cannot do his past relevant work, the ALJ proceeds
to step five, and the burden shifts to the Commissioner to show (1) the claimant
can make an adjustment to other work, and (2) the claimant can perform specific
jobs that exist in the national economy.  *Batson v. Comm'r of Soc. Sec. Admin.*,
359 F.3d 1190, 1193-94 (9th Cir. 2004).  If the claimant cannot make an
adjustment to other work in the national economy, he is found "disabled."  20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On August 8, 2018, the ALJ issued a decision finding Plaintiff was not
disabled as defined in the Social Security Act from July 1, 2008 through the date of
the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful
activity since July 1, 2008, the alleged date of onset.  Tr. 585.

At step two, the ALJ determined that Plaintiff had the following severe
impairments: osteoarthritis and chondromalacia of the left knee, status-post surgery
in February 2015; degenerative changes of the left shoulder; and anxiety disorder
vs. posttraumatic stress disorder (PTSD).  Tr. 585.

At step three, the ALJ found that Plaintiff did not have an impairment or
combination of impairments that met or medically equaled the severity of one of
the listed impairments.  Tr. 586.

At step four, the ALJ assessed Plaintiff's residual function capacity and
determined he could perform a range of light work with the following limitations:

[H]e can stand/walk for a total of 4 hours in an 8-hour workday. The claimant can occasionally climb ramps and stairs, but never climb ladders ropes, or scaffolds. The claimant can occasionally balance, stoop, and crouch. The claimant should not kneel or crawl. The claimant has no limitations when reaching, handling, or fingering. The claimant is limited to occasional overhead reaching with the left upper extremity. The claimant should avoid concentrated exposure to excessive vibration and hazards (such as dangerous machinery and unprotected heights[)].

The claimant can perform simple, routine tasks and make simple work-related decisions. The claimant can have superficial interaction with coworkers and occasional, superficial interaction with the general public.

Tr. 588. The ALJ identified Plaintiff's past relevant work as machine packager, production machine tender, construction worker, commercial/institutional cleaner, short order cook, general hardware salesperson, and fast food services manager and found that he could not perform this past relevant work. Tr. 599.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of "marker," "assembler, small products," and "inspector, hand packager." Tr. 600. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from July 1, 2008, through the date of the ALJ's decision. *Id.*

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to meet her burden at step five, (2) failing to properly weigh Plaintiff's symptom statements, and (3) failing to properly weigh the medical opinions in the record.

# DISCUSSION

## 1. Step Five

At step five, the burden of proof shifts to the Commissioner "to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy." *Tackett*, 180 F.3d at 1100. Plaintiff challenges the ALJ's step five determination by arguing that the ALJ failed to establish that a significant number of jobs existed and erroneously applied the Grid Rules. ECF No. 13 at 3-8.

### A. Significant Number of Jobs

At the August 28, 2017 hearing, the vocational expert testified that a person with a similar age, education, and work history as Plaintiff and the residual functional capacity identified by the ALJ could perform other jobs available in the national economy, including "marker," "assembler, small products II," and "inspector, hand packager." Tr. 664-67. The vocational expert stated that the maker occupation had 218,000 jobs in the national economy, the assembler occupation had 254,000 jobs in the national economy, and the inspector occupation had 943,000 jobs in the national economy. Tr. 665-66.

Plaintiff's attorney asked the vocational expert what methodology she used to arrive at the number 218,000 jobs for the occupation of marker. Tr. 669. She stated that she used the US Publishing numbers that are based upon Bureau of Labor specific state's data. *Id*. She testified that there were 38 occupations within the Standard Occupations Classification (SOC) group[2], and that 218,000 was the number for all 38 occupations. Tr. 670. Likewise, she testified that there were about 1,500 occupations in the SOC group for the assembler occupation and

---

[2]*See Chavez v. Berryhill*, 895 F.3d 962, 965-67 (7th Cir. 2018) (in depth discussion regarding the limitations presented by relying on the Dictionary of Occupational Titles and the corresponding SOC groups).

around 780 occupations in the SOC group for the inspector occupation. *Id*. The ALJ followed up counsel's questioning by asking the vocational expert whether the three jobs identified with the hypothetical only represented a sample of the jobs an individual with that residual functional capacity could perform. Tr. 674-75. The vocational expert confirmed that those three jobs only represented a sample of the jobs such an individual could perform and stated that for an individual with that residual functional capacity there would be thousands of jobs in the national economy. Tr. 675.

Plaintiff argues that relying on the job numbers associated with the SOC group is fundamentally flawed because the SOC group contains jobs that require a residual functional capacity that exceeds the one presented in the hypothetical. ECF No. 13 at 4-5. Plaintiff relies heavily on a case from the Seventh Circuit, *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018). *Id*. The Court in *Chavez* found that "[b]efore accepting a [vocational expert]'s job-number estimate, the ALJ when confronted by a claimant's challenge, must require the [vocational expert] to offer a reasoned and principled explanation." 895 F.3d at 970. Here, unlike in *Chavez*, Plaintiff's counsel did not challenge the vocational expert's testimony regarding job numbers. He only inquired regarding the methodology she used in reaching the numbers she provided and the number of jobs in the SOC group. Tr. 669-70. In *Chavez*, the claimant's counsel and the ALJ repeatedly questioned why the vocational expert chose to use the equal distribution method over the JobBrowser Pro software, and the vocational expert failed to provide an adequate explanation. 895 F.3d at 966-67. Here no such inquiry took place. While Plaintiff inquired as to the methodology and the SOC numbers, he never set forth an alternative methodology and inquired why that was not chosen. Essentially, he did not challenge the methodology the vocational expert used, he merely inquired what methodology was used. Therefore, without a challenge no "reasoned and principled explanation" was required, and *Chavez* is not applicable.

Furthermore, Plaintiff advocated for the use of the equal distribution method of calculating job numbers in his Reply. ECF No. 15 at 3-4. The Circuit Court in *Chavez* rejected the use of the equal distribution method. 895 F.3d at 969. Therefore, *Chavez* is not persuasive in this case.

### B.     Application of the Grid Rules

Plaintiff asserts that because Plaintiff's residual functional capacity determination fell between sedentary and light work, the ALJ was required to apply the Medical-Vocational Guidelines (Grid Rules) associated with sedentary work, which would result in a finding of "disabled" on Plaintiff's fiftieth birthday. ECF No. 13 at 6-7.

The Grid Rules are an administrative tool on which the Commissioner must rely when considering claimants with substantially equivalent levels of impairment. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). The Grids reflect the claimant's maximum sustained exertional work capacity. *See* S.S.R. 83-10 ("exertional capabilities" are used "to identify maximum sustained work capability"). "In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, . . . [vocational expert] assistance is advisable for these types of cases." S.S.R. 83-12.

Here, the sitting and standing requirements fell between the sedentary and light work. Therefore, the ALJ took the testimony of a vocational expert, as directed by S.S.R. 83-12. The Court will not disturb the ALJ's step five determination.

### 2.     Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that Plaintiff's symptom statements were unreliable. ECF No. 13 at 7-17.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the

ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms to be "not entirely consistent with the medical evidence and other evidence in the record." Tr. 589. Specifically, the ALJ provided the following six reasons: (1) Plaintiff's alleged symptoms were not supported by the objective medical evidence including benign surgical and examination findings; (2) Plaintiff's alleged symptoms were not supported by his benign presentation to providers; (3) Plaintiff's alleged symptoms were inconsistent with his reported activities; (4) Plaintiff's reports of severe mental health symptoms was inconsistent with his denial of symptoms to providers; (5) Plaintiff's reported severity was undermined by his drug seeking behavior; and (6) Plaintiff made multiple inconsistent statements throughout the record. Tr. 589-94.

### A.    Objective Medical Evidence

The ALJ's first reason for finding Plaintiff's symptom statements as less than fully reliable, that the severity of reported symptoms was not supported by the objective medical evidence, is specific, clear and convincing. Although it cannot serve as the sole reason for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ made several specific findings that demonstrated how Plaintiff's reported symptoms were not supported by the objective medical

evidence. First, the ALJ discussed the medical expert's testimony that Plaintiff's surgery report from his February 2015 knee surgery showed mild findings of chondromalacia, and that a surgery report is more accurate than an MRI. Tr. 589. Dr. Kendrick testified that he considered that records from the last surgery, because "it's what he's left with that counts," and that "a MRI can have false negatives and false positives, but the direct vision of the surgeon during surgery never produces a false positive." Tr. 651. Plaintiff argues that relying on the surgeon's report from only the final surgery is flawed as it fails to address the longitudinal functionality of the knee. ECF No. 13 at 12. However, Plaintiff appears to overlook the fact that the ALJ addressed the medical evidence before the 2015 knee surgery, which included a normal range of motion, normal strength, and intact sensation. Tr. 589-90. This included negative laxity tests and meniscal tests, except for a positive left lateral McMurray's test in July of 2011, February of 2013, April of 2013, October of 2014, and January of 2015. Tr. 433, 564, 569, 1122, 1125. Therefore, substantial evidence supports the ALJ's determination

Second, the ALJ observed that Plaintiff's statements that he was required to elevate his leg was not supported in the record. Tr. 591. She acknowledged that following his February 2015 knee surgery, Plaintiff had been instructed to elevate his leg, but there was no objective evidence to support an ongoing need to elevate the leg. *Id*. The ALJ found that there were some records that demonstrated mild swelling, but the majority of the records showed no swelling. *Id*. Mild swelling was mentioned following his 2015 surgery, Tr. 1138, and in July of 2017, Tr. 1638, but no edema was present in April of 2011, Tr. 323, 332, 1182, May of 2013, Tr. 465, January of 2015, Tr. 1125, and August of 2015, Tr. 1338. Therefore, this reason is supported by substantial evidence and meets the specific, clear and convincing standard.

Third, the ALJ discussed Plaintiff's left shoulder. Tr. 591. In doing so, the ALJ never actually compared Plaintiff's left shoulder complaints to any of the

objective evidence and found that there were any inconsistencies. *Id*. Therefore, this does not rise to the level of specific, clear, and convincing.

Fourth, the ALJ observed that Plaintiff's mental allegations were inconsistent with his performance on testing, specifically finding that the normal testing did not support Plaintiff's description of severe memory/concentration deficits. Tr. 593. The psychological examinations in the record demonstrate that he was capable of performing simple, detailed, and complex tasks, Tr. 451, 1163, which the ALJ found to be inconsistent with his reported difficulties of severe memory and concentration deficits, Tr. 593. The ALJ's conclusion is supported in the record and meets the specific, clear, and convincing standard.

**B.    Benign Presentation**

The ALJ found that Plaintiff's description of constant, excruciating pain at rest and on exertion was not supported by his providers routinely observing that he appeared in no acute distress during evaluations. Tr. 590 *citing* Tr. 323 (April 24, 2011 "under no acute distress"); Tr. 328 (April 13, 2011 "is not in any distress"); Tr. 375 (May 18, 2011 "in no acute distress"); Tr. 378 (May 4, 2011 "in no acute distress"); Tr. 382 (August 16, 2010 "in no acute distress"); Tr. 386 (March 16, 2010 "in no acute distress"); Tr. 396 (June 22, 2011 "No apparent distress"); Tr. 552 (May 9, 2013 "in no acute distress"); Tr. 564 (February 26, 2013 "No apparent distress"); Tr. 1260, 1263 (June 29, 2014 "no apparent distress"); Tr. 1273 (August 7, 2013 "in no acute distress"); Tr. 1347, 1537 (May 5, 2015 "in no acute distress"); Tr. 1507 (March 14, 2017 "No acute distress"); Tr. 1611 (January 26, 2012 "in no acute distress"). On July 21, 2011, it was noted that Plaintiff appeared anxious and in pain at an office visit. Tr. 434. However, in the majority of his appearances in the medical record, Plaintiff was not demonstrating pain at rest, the ALJ's finding is supported by substantial evidence and contradicts Plaintiff's assertion that these citations were "cherry-picked," ECF No. 13 at 14.

Likewise, the ALJ found that Plaintiff's alleged mental health allegations

were "out of proportion" to Plaintiff's presentation to providers.  Tr. 592.  The ALJ found that providers observed Plaintiff as alert and oriented, with normal mood/affect, no unusual signs of depression or anxiety, and under no acute distress.  *Id.*  Again, the ALJ supported her determination with a series of citations to the record.

A provider's observation of a patient's presentation at the time of evaluation is part of a medical examination and is objective evidence.  Therefore, this is a relevant factor when addressing Plaintiff's symptom statements.  *See Rollins*, 261 F.3d at 857.  Here, the ALJ's determination was supported by substantial evidence, and it meets the specific, clear and convincing standard.

### C.    Reported Activities

The ALJ's third reason for rejecting Plaintiff's symptom statements, that his reported activities were inconsistent with his reported symptoms, is specific, clear and convincing.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ found that Plaintiff's statements that he had poor balance, he had severe pain with movement of his knee, and that he could not walk on uneven surfaces, was inconsistent with his reports that he was very active and that he rode his BMX bike on a daily basis.  Tr. 591.  The ALJ observed that the ability to ride a bicycle requires good balance and constant leg motion, and that riding outside would require him to go over uneven surfaces.  *Id*.

In August of 2013, Plaintiff presented to the emergency room with a forearm

contusion stating that he was on a mountain bike and was hit by a van. Tr. 1276. In an August 11, 2014 evaluation, Plaintiff reported that his "[r]ecreational activities include riding his BMX bike on a daily basis, very active." Tr. 1248. His goal was to be able to ride his BMX bike without any pain and to strengthen the left leg. *Id.* This shows at least a year of Plaintiff riding bikes, which is inconsistent with his reported history of falling down. Tr. 636. Therefore, the record, when reviewed as a whole, supports the ALJ's determination. This meets the specific, clear and convincing standard.

### D. Denying Symptoms

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that he routinely denied symptoms, is not supported by substantial evidence

The ALJ found that while Plaintiff alleged chronic anxiety, panic attacks, and PTSD symptoms, he routinely denied any symptoms of mental health impairments to medical providers and he had not asked medical providers for medication to assist with any of his alleged symptoms. Tr. 592. Plaintiff accurately points out that he never complained of depression, Tr. 267, 991, yet the ALJ relied on Plaintiff's denial of depression as evidence to reject his mental health symptom statements. Tr. 592; ECF No. 13 at 17. The record shows that Plaintiff denied depression, but complained of anxiety, panic attacks, and PTSD. Tr. 1349, 1539. Therefore, this reason is not supported by substantial evidence and falls short of the specific, clear and convincing standard.

### E. Drug Seeking Behavior

The ALJ found that the record contained evidence of drug seeking behavior and a positive urine test that was inconsistent with his prescriptions. Tr. 593. The ALJ concluded that this undermined his subjective pain allegations. *Id.*

The ALJ also may consider a claimant's drug-seeking behavior in rejecting symptom testimony. *See Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001). In April of 2015, Dr. Kim stated the following:

> I reviewed the patient's prescription monitoring program profile online. There does appear to be multiple instances in which he has had various physicians or other providers write pain medications for him which seem to have overlapping dates. I did explain to him that though he has recently had surgery that this type of activity would not be appropriate in the future unless all prescribing physician[s] were aware of any acute issues that would prompt multiple providers to write medications.

Tr. 1350, 1540-41. At the April 2015 visit, Plaintiff's urine screen was positive for oxazepam and marijuana, and negative for hydrocodone. Tr. 1352, 1536-37. All of this was inconsistent with his prescribed medications. *Id*. Dr. Kim stated that in all likelihood, he would not be initiating opioid management in the future. Tr. 1537.

The ALJ misstated the record by indicating that Plaintiff's urine test was positive for hydrocodone. Tr. 593. However, the evidence cited by the ALJ, specifically that there were multiple instances of overlapping prescriptions, is sufficient to support the ALJ's conclusion that Plaintiff was drug seeking during the period at issue. Therefore, this meets the specific, clear and convincing standard.

### F. Inconsistent Statements

The ALJ also found that Plaintiff made a series of inconsistent statements throughout the record that eroded the reliability of Plaintiff's self-reports. Tr. 593-94.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ pointed to multiple locations in the record where Plaintiff reported different onset dates for his shoulder and knee pain. Tr. 593-94. He also pointed to several locations where Plaintiff made inconsistent statements regarding his substance abuse. *Id*.

Plaintiff argues that whether Plaintiff's knee pain started in 1986 or 1990 and whether the shoulder pain had been present for several years or only in the last few months was just an insignificant, minor discrepancy. ECF No. 13 at 9-10. However, these inconsistencies, when seen in conjunction with Plaintiff's drug seeking behavior and failure to accurately report drug use, demonstrate a pattern of behavior that undermines Plaintiff's reliability when addressing his symptoms and their severity.

The ALJ pointed to multiple locations in the record in which Plaintiff had either denied drug use that was later proven to be present in his system at the time or where he provided an inaccurate date of last drug use. Tr. 593-94. An ALJ may properly consider evidence of a claimant's failure to accurately report his substance abuse when determining the reliability of his symptom statements. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports rejecting a claimant's symptom statements); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to rejecting a claimant's symptom statements). On April 13, 2011, Plaintiff stated he had been clean from substances for seven months, Tr. 335, but a drug screen the same day came back positive for amphetamines, methamphetamines, opiates, and cannabis, Tr. 349. On December 16, 2011, Plaintiff "denie[d] any history of alcohol abuse or experimentation with any illicit substances." Tr. 449. However, this was inconsistent with the positive drug screen in April of 2011, Tr. 349, his statements to Dr. Pandolfi in April of 2011 that he had a history of heroin and methamphetamine use, Tr. 331, 335, and his report that he was treated for unconsciousness in 2011 due to polysubstance abuse, Tr. 1312. On April 27, 2015, Plaintiff denied any drug use, Tr. 1538-40, but his drug urine test came back positive for marijuana, Tr. 1537. The ALJ's finding of inconsistently reporting substance use is supported by substantial evidence and

1    meets the specific, clear and convincing standard.

2          Additionally, the ALJ pointed to Plaintiff's testimony that he required the

3    use of a cane on a daily basis, however there were no prescriptions for the cane in

4    the record and Plaintiff appeared at appointments without an assistance device.  Tr.

5    594.  However, this reason is not supported by substantial evidence.  There is

6    evidence in the record he was instructed to use an assistance device.  From January

7    through March of 2014, following injections of Orthovisc, Plaintiff was instructed

8    to use an assistance device for support.  Tr. 1106, 1110, 1114, 1117, 1190.

9    Therefore, this reason is not supported by substantial evidence.

10         In conclusion, while not every reason the ALJ provided met the specific,

11   clear and convincing standard, enough reasons did to support her determination

12   that Plaintiff's symptom statements were less than reliable.  *See Carmickle v.*

13   *Comm., Soc. Sec. Admin.,* 533 F.3d 1155, 1163 (9th Cir. 2008) (upholding an

14   adverse credibility finding where the ALJ provided four reasons to discredit the

15   claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a

16   credibility finding where one of several reasons was unsupported by the record);

17   *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless

18   when "it is clear from the record that the . . . error was inconsequential to the

19   ultimate nondisability determination").  The Court will not disturb the ALJ's

20   determination regarding Plaintiff's symptom statements.

21   **C.    Medical Opinions**

22         Plaintiff argues the ALJ failed to properly consider and weigh the medical

23   opinions expressed by Dr. Kendrick, Dr. Seltzer, Dr. Koukol, Dr. Sabry, Dr.

24   Merrill, Dr. Thompson, Dr. Lui, Dr. Dalton, Sonya Starr, ARNP, and Ismael

25   Varggs, PA-C.  ECF No. 13 at 18-21.

26         In weighing medical source opinions, the ALJ should distinguish between

27   three different types of physicians: (1) treating physicians, who actually treat the

28   claimant; (2) examining physicians, who examine but do not treat the claimant;

and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Dr. Kendrick, Dr. Seltzer, Dr. Koukol, Dr. Sabry, and Dr. Merrill

Plaintiff challenges the weight the ALJ provided to these opinions, and argues that these opinions do not support the residual functional capacity determination. ECF No. 13 at 18-20.

Dr. Kendrick limited Plaintiff to a residual functional capacity between light and sedentary. Tr. 647. The ALJ gave the opinion significant weight. Tr. 594. Plaintiff argues that the ALJ erred by relying on Dr. Kendrick's opinion because he did not consider Plaintiff's functioning prior to the 2015 surgery. ECF No. 13 at 19. However, the ALJ provided the following explanation:

> Given Dr. Kendrick's interpretation of the surgical findings as consistent with only mild chondromalacia and considering the relatively benign examination findings before and after his March 2015

surgery, I have incorporated Dr. Kendrick's opinion by limiting the claimant to light exertional work, except that he can only stand/walk 4 hours in an 8-hour workday.

Tr. 594. An ALJ is not required to provide an explanation for accepting an opinion but must provide an explanation for rejecting an opinion. S.S.R. 96-8p ("The [residual functional capacity] assessment must always consider and address medical source opinions. If the [residual functional capacity] assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). Therefore, the Court will not disturb the ALJ's treatment of Dr. Kendrick's opinion.

Dr. Seltzer examined Plaintiff on May 17, 2010 and completed a form for the Washington Department of Social and Health Services (DSHS) on May 17, 2011 stating that Plaintiff was limited to light work. Tr. 537-38. The record then contains a May 17, 2010 letter from Dr. Seltzer stating that, based on a May 19, 2010 MRI, Plaintiff was "not a candidate for kneeling, stooping, squatting, and climbing and can do light types of activities at this time." Tr. 539. The ALJ assigned the DSHS opinion of Dr. Seltzer only some weight because it was in a "check the box" format. Tr. 32. However, the ALJ did not address the May 17, 2010 letter addressing Plaintiff's ability to stoop.

Plaintiff argues that the stooping limitation with a light residual functional capacity would preclude work and that the ALJ failed to state why she did not adopt the stooping preclusion as part of the residual functional capacity determination. ECF No. 13 at 19. Under S.S.R. 96-8p, the ALJ was required to explain why the stooping preclusion was not adopted. Therefore, the ALJ erred by not addressing the May 17, 2010 letter.

However, the opinion expressed on the May 17, 2010 letter is premised on the May 19, 2010 MRI. Tr. 539. Therefore, Dr. Seltzer's limitation on stooping predates the MRI the limitation is based upon by two days. Additionally, while the

letter appears on Dr. Seltzer's letterhead, the letter is unsigned. *Id.* Considering the inconsistency in the dates and that the letter is unsigned, it does not constitute substantial evidence. *Richardson*, 402 U.S. at 401 (substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion). Therefore, this Court finds that any error caused by the ALJ failing to address the letter in her decision would be considered harmless. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

Dr. Koukol limited Plaintiff to light work with frequent front and lateral reaching on the left and occasional overhead reaching on the left. Tr. 795-96. The ALJ rejected the front and lateral reaching limitations because physical examinations show no significant limitations in Plaintiff's ability to reach below the shoulder. Tr. 595. Dr. Koukol is not an examining or treating physician. He is a state agency reviewer. Tr. 595. Therefore, the ALJ was not required to reach the clear and convincing or the specific and legitimate standards when rejecting any portion of his opinion. However, the Ninth Circuit has found that a reference to specific evidence in the medical record is sufficient to reject such an opinion. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998). Here, the ALJ failed to set forth any evidence to support this conclusion. However, any error on the part of the ALJ for failing to cite to any medical evidence is harmless because the limitation to frequent front and lateral reaching on the left does not preclude the occupations of marker or inspector, hand packager. Tr. 595. The occupations of marker and inspector, hand packager are only limited to frequent reaching. DICTIONARY OF OCCUPATIONAL TITLES, 209.587-034, 1991 WL 671802; 559.687-074, 1991 WL 682797 (Jan. 1, 2016).

Dr. Sabry and Dr. Merrill limited Plaintiff to only standing for two hours in an eight-hour day. Tr. 102, 319. The ALJ concluded that given the mild surgical findings, his lack of need for an assistive device, his ability to ride a bike on a daily

basis, and the normal examination findings, the two hour standing/walking limitation was not adopted. Tr. 595. Plaintiff argued that the ALJ's reasons for rejecting the two-hour limitation was not supported by substantial evidence. ECF No. 13 at 19. However, as discussed above, the mild surgical findings in 2015, riding his BMX bike, and the normal examination findings are all supported by substantial evidence, but the ALJ's finding that the assistive device was never necessary in the medical records is not supported by substantial evidence. Therefore, three of the four reasons the ALJ provided for rejecting the opinion are supported by substantial evidence. This is sufficient to uphold the ALJ's rejection of the two-hour standing/walking limitation.

**B.    Dr. Thompson, Dr. Lui, Dr. Dalton, Sonya Starr, ARNP, and Ismael Varggs, PA-C**

Dr. Thompson, Dr. Lui, Dr. Dalton, Ms. Starr, and Mr. Varggs all opined that Plaintiff was limited to sedentary work. Tr. 1166, 1186, 1384, 1428, 1599. Furthermore, Ms. Starr opined that Plaintiff would miss work an average of three days a month. Tr. 1166.

The ALJ rejected these opinions for three reasons: (1) they were not supported by the medical evidence; (2) they were inconsistent with Plaintiff's reported activity of riding his bike; and (3) they were based on Plaintiff's self-reports. Tr. 596.

The ALJ's first reason for rejecting these opinions, that they were not supported by the medical evidence, meets the specific and legitimate standard. Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195. Here, the ALJ's finding that the objective medical evidence indicated only mild chondromalacia of the left knee is supported by substantial evidence. *See supra*. Therefore, the ALJ's conclusion that the evidence was inconsistent with the opinions of Mr. Varggs, Dr. Thompson, Dr. Lui, Dr. Dalton, and Ms. Starr is

specific and legitimate.

However, the ALJ's finding that the medical evidence of the shoulder injury was inconsistent with the opinions of Dr. Thompson, Dr. Lui, Dr. Dalton, and Ms. Starr is not specific and legitimate. The ALJ's conclusion that Plaintiff had only benign examination findings prior to surgery is not supported by substantial evidence. In March of 2015, Plaintiff had a reduced range of motion, tenderness, crepitus, and a positive Neer's test on the left shoulder. Tr. 1543. However, any error would be harmless because the ALJ provided other reasons that met the specific and legitimate standard. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ's second reason for rejecting these opinions, that they were inconsistent with Plaintiff's activity of riding his bike, is specific and legitimate. A claimant's testimony about his daily activities may be seen as inconsistent with the presence of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990). As addressed above, the ALJ's finding that Plaintiff activity of riding his BMX bike is supported by substantial evidence. Therefore, this reason meets the specific and legitimate standard.

The ALJ's third reason for rejecting these opinions, that they were based on Plaintiff's unreliable self-reports, is not specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, while the ALJ reiterated her reasons for finding Plaintiff's self-reports unreliable, she failed to state why she concluded these opinions relied more heavily on Plaintiff's self-reports. Tr. 596.

Any resulting error from these reasons that fell short of the specific and

legitimate standard would be harmless because the ALJ provided other reasons to reject the opinions that met the specific and legitimate standard. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). Therefore, the Court will not disturb the ALJ's treatment of the opinion evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.  Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED November 27, 2019.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE